## KOPS BROS. CO. v. SMITH.

1. SALES—BONA FIDE PURCHASER—CONSIDERATION—INDEBTEDNESS.
   One who takes goods in payment of a past-due indebtedness will not be protected against a defect in the title of his vendor on the ground that he is a *bona fide* purchaser.

2. SAME—AGENCY—CREDIT.
   In the absence of authority conferred, or a valid usage, an agent cannot sell property on credit.

3. SAME—FRAUD—EVIDENCE.
   Plaintiff consigned pianos to its agent for sale on commission to persons desiring to use them in their homes. The agent sold them on credit, without security, to an insolvent trader, who two days later transferred them to defendant in part payment of an indebtedness. Plaintiff's name was on the pianos. The agent and trader attempted to conceal from plaintiff the fact that defendant had them. In replevin for the pianos, *held*, that there was sufficient evidence of fraud to justify the submission of the question to the jury.

Error to Wayne; Frazer, J. Submitted April 14, 1904. (Docket No. 62.) Decided June 25, 1904.

Replevin by Kops Brothers Company against Stephen B. Smith, doing business as S. B. Smith & Co. From a

judgment for defendant on verdict directed by the court, plaintiff brings error.  Reversed.

The plaintiff in this case is a corporation of the State of Illinois, and carrying on the business of selling pianos, with head offices in the city of New York and a branch office in the city of Chicago.  D. S. Horwitz was traveling agent for the plaintiff.  His duties were selling pianos, appointing agents, and selling pianos to dealers. While in Carson City, Mich., about the month of August, 1901, he met one Louis J. Morey, who at some time previous had been employed selling pianos by one J. T. McGinn, a dealer at St. Louis, Mich.  After some negotiations with said Morey, Mr. Horwitz agreed to consign some pianos to him, Morey signing the contracts therefor.

On October 7th, Morey made an arrangement with McGinn to sell him one of the pianos, which Morey said he had shipped to Alma with the intention of selling it.  The trade was consummated, and McGinn gave plaintiff his note on four months' time.  About a week afterwards, Morey and McGinn entered into an agreement by which Morey was to work for McGinn, and transfer the other two pianos, which had been consigned by the plaintiff, to McGinn, taking McGinn's notes therefor on six months' time.  Morey forwarded these notes to plaintiff, assuring it that they were perfectly good.  The plaintiff refused to accept the notes, returning them to Morey, who continued to try and have plaintiff accept the notes upon his assurance that they were good.  Plaintiff each time returned the notes with a demand for cash according to the terms of the contract.

J. T. McGinn had been selling pianos for defendant for several years, and at this time, after returning to Mr. Smith all the pianos he then had that he received from him, was indebted to defendant in the sum of $1,180.  On the 16th day of October—two days after McGinn had received the pianos in question from Morey—he (McGinn) transferred the pianos, together with organs, a horse, notes

received on pianos, and his own note, secured by a chattel mortgage on his household effects, to defendant in settlement of his (McGinn's) account with said defendant.

Mr. Horwitz, representative of plaintiff, called on Morey, and together they called on McGinn. McGinn did not tell what he had done with the pianos, but spoke as though he intended paying for them. After some discussion McGinn agreed to give his note, but refused to sign the note prepared by Mr. Horwitz. Morey, who was present when the transfer took place from McGinn to defendant, and at this time in the employ of McGinn, did not acquaint Mr. Horwitz with the facts and circumstances. Mr. Horwitz learned that the pianos had been shipped to Detroit, where he went, and found two of the pianos in the possession of defendant. Mr. Horwitz made a demand for the pianos. The defendant refused to give them up, claiming he had bought them, and plaintiff brought an action in replevin to recover the same.

The agreement between plaintiff and Morey was as follows:

"Received of Kops Brothers Company, Chicago, Ill., on consignment, one Kops Bros. Style 4, Mahogany, No. 46,472, for sale for the account of said company, or its assigns, in the sum of $185. And I hereby agree to remit forthwith to the Kops Brothers Company, or its assigns, at its Chicago office, the proceeds of the sale of said instrument in cash in the above specified sum. It is understood that I hold the above-described instrument subject to the order of the Kops Brothers Company, or its assigns, free of expense, charges, or costs to it of any kind whatever.

"I hereby guarantee the said Kops Brothers Company against loss or damage of any kind on said instrument while in my possession or in my charge.

"In making sale of said instrument I agree that my compensation and commission hereunder shall be the sum at which I may sell same in excess of $185."

The court directed a verdict for the defendant.

*Charles R. Robertson*, for appellant.

*Fred H. Aldrich*, for appellee.

Grant, J. (*after stating the facts*).   If there was an infirmity of title to the pianos in the hands of McGinn, defendant could not be considered a *bona fide* purchaser, as he gave no new consideration for the purchase.   The sole consideration for the transfer was a past-due indebtedness.   *Vincent* v. *Hansen*, 113 Mich. 173 (71 N. W. 488); *Schloss* v. *Feltus*, 103 Mich. 525 (61 N. W. 797, 36 L. R. A. 161).   The only question, therefore, is, Was there evidence of fraud on the part of McGinn and Morey in the sale and transfer of this property?   The goods were consigned by plaintiff to Morey for sale.   Until sold by Morey, the title remained in plaintiff.   When a piano was sold by Morey, as between plaintiff and him the transaction was for cash, and Morey was under obligation to remit cash therefor.   In the absence of authority conferred, or a valid usage, an agent cannot sell property on credit; the sale must be for cash.   Mechem, Agency, § 353; *Burks* v. *Hubbard*, 69 Ala. 379.

Whether, under the contract, Morey was authorized to sell upon credit, we need not determine.   It made no difference to plaintiff whether Morey sold for cash or credit, if Morey paid cash on making a sale.   McGinn was in the same business as Morey, and received pianos from defendant for sale.   They were consigned to him for sale on what defendant termed "consignment contracts," but the precise terms and conditions are not stated.   It is a common method of carrying on business in property of this character.   The sales by Morey to McGinn were not made in the usual course of trade by Morey.   Morey received the pianos for sale to customers who desired to purchase for their own home use.   Instead he sold them on long terms to an insolvent trader in the same business, without any security, or any attempt to protect plaintiff.   McGinn was in debt to his employer to the amount of $1,180, and could not pay.   The name of plaintiff as maker was upon these pianos.   Whether the circumstances were sufficient to put McGinn upon inquiry as to Morey's authority to sell to him was a question for

the jury to consider in determining the question of fraud. Morey knew that plaintiff was under no obligation to take McGinn's notes, and that it was entitled to receive cash. Within two days after the alleged transfer by Morey to McGinn, McGinn turned the property over to defendant in part payment of his indebtedness. Without entering into details, the conduct of Morey and McGinn, when plaintiff's agent attempted to ascertain where this property was, and to get it back, showed an intent to deceive the plaintiff. We think there was sufficient evidence of fraud to justify the submission of the question to the jury. If the transaction was fraudulent, then the plaintiff was entitled to recover. If fraudulent, defendant's claim against McGinn is the same that it was before the transfer to him. Neither law nor justice permits a creditor to be paid with goods which his debtor has obtained by such fraud as will vitiate the title between the original vendor and vendee.

The judgment is reversed, and new trial ordered.

The other Justices concurred.