BUFFALO VALLEY REALTY COMPANY, Appellant, *v.* THE STATE OF NEW YORK, Respondent.
(Claim No. 21937.)

Argued January 18, 1937; decided March 16, 1937.

*Herbert B. Lee* for appellant. The State took title to claimant's quadrangle of land by virtue of its filing and service of appropriation map and notice. (*Kahlen v. State*, 223 N. Y. 383; *Matter of Culver Contrg. Corp. v. Humphrey*, 268 N. Y. 26; *Matter of City of Rochester v. Holden*, 224 N. Y. 386.) The State's error in certifying the ownership of the quadrangle on the map was immaterial. (*Boom Co. v. Patterson*, 98 U. S. 403; *Matter of City of New York [Grand Blvd.]*, 212 N. Y. 538; *United States v. Jones*, 109 U. S. 513; *Huling v. Kaw Valley Ry. Co.*, 130 U. S. 559; *Granger v. City of Syracuse*, 38 How. Pr. 308; *Young v. Red Fork Levee Dist.*, 124 Ark. 61; *County of Westchester v. Trustees*, 140 App. Div. 188; *Buel v. Trustees*, 3 N. Y. 197; *Matter of Commrs. of Washington Park*, 52 N. Y. 131.)

*John J. Bennett, Jr., Attorney-General* (*Leon M. Layden* of counsel), for respondent. There was no appropriation by the State of New York of any part of claimant's property. (*Stewart v. Wallis*, 30 Barb. 344; *People v. Whitneys Point*, 32 Hun, 508; 102 N. Y. 81; *Matter of Laidlaw*, 153 App. Div. 343.) There can be no recovery for damages to property not appropriated. (*Miller v. State*, 229 App. Div. 423; *Transit Com. v. L. I. R. R. Co.*, 253 N. Y. 345; *Adamo v. State*, 235 App. Div. 12; *Goodale v. Tuttle*, 29 N. Y. 459; *Bowman v. Town of Chenango*, 227 N. Y. 459; *Bull v. State*, 231 App. Div. 313; *Gould v. Booth*, 66 N. Y. 62; *Van Aken v. State*, 261 N. Y. 360.)

HUBBS, J. Claimant owned a parcel of land in the town of Elma, consisting of approximately fifty-eight acres, bounded on the west by the center line of Bowen road. Adjoining that land on the south was a parcel likewise bounded by the center line of Bowen road, owned by Herbert B. Lee, treasurer of claimant corporation. On May 2, 1929, the Public Service Commission approved

by order the description and map of certain lands required in a grade crossing elimination. In such a proceeding, the statute, Grade Crossing Elimination Act (Laws of 1928, ch. 678), section 5, specifies the procedure whereby the Public Service Commission may cause land to be acquired for grade crossing eliminations. Briefly stated, the requirements are that the Public Service Commission shall direct the Department of Public Works or the railroad corporation to prepare an accurate description and map of any lands which the Commission may deem it necessary to take and direct the Department of Public Works to make or cause to be made an appraisal of such lands. On the approval of such description, map and appraisal by the Commission it shall deliver the description and map to the Department of Public Works and shall ·direct such Department to acquire the lands by appropriation. The description and original tracing of such maps shall be filed in the office of the Department of Public Works which shall cause a certified copy of such description and map to be filed in the office of the Department of State and notice of such filing to be given to the Public Service Commission. *On the filing of such description and map in the office of the Department of State, the People may enter and take possession of the lands for the purpose of elimination of any crossing.* The Department of Public Works shall thereupon deliver to the Attorney-General a copy of such description and map, " whereupon it shall be the duty of the attorney-general to advise and certify to the department of public works the names of the owners of the lands so described. * * * The department of public works shall thereupon cause a copy of such description and map, with notice of the filing thereof in the office of the department of state, to be served on the owner or owners of the lands * * * *so certified by the attorney-general* and from the time of such service the appropriation by the people of the state

of the property described in such notice shall be deemed complete *and, thereupon, such property shall become and be the property of the people of the state.*"

The description and map of the lands sought to be acquired under the order of May 2, 1929, were approved by the Public Service Commission on May 2, 1929, were filed in the office of the Department of Public Works on May 8, 1929, and on that day duly certified to the Public Service Commission by the Department of Public Works. The description referred to the property as " being lands of Herbert Lee (reputed owner)."

It appears that the Attorney-General by mistake certified that the title to the land in question covered by the description and map was in Herbert B. Lee. Thereafter and on September 21, 1929, a copy of the description and map with formal notice of appropriation were served on Herbert B. Lee and thereafter the papers were filed in the Erie County Clerk's office. The Court of Claims found " that said appropriation map, Exhibit 13, was duly filed and recorded in the Erie County Clerk's office, and all provisions of the statute complied with."

No different finding could have been made. The statute had been strictly complied with. The fact that the Attorney-General by mistake reported the name of the reputed owner of the parcel in question wrong is immaterial. The statute, nevertheless, vested the title of the land described in the State. There is nothing in the record to indicate that had Lee been the actual owner of all the land covered by such description and map it could have been decided that the State did not acquire title to the land so described.

Subsequently it was discovered that the small parcel in question was owned by claimant. It had filed a claim against the State for damages and, upon discovering the fact that the land in question was owned by it and not by Lee, it amended its claim to cover that land which in the original proceedings had been included in the description of lands owned by Lee. The State filed an

amended map and the Department of Public Works made an order withdrawing the parcel of land in question from the description of land appropriated. If the title to that land had vested in the State it could not divest itself of title and prevent the claimant from recovering its damage for such appropriation. The Appellate Division has decided that there was no appropriation of the small parcel in question. There was no appropriation by the filing of the amended map. The withdrawal of that map was immaterial.

The real question is whether an appropriation resulted by the filing and service of the first map and description in accord with all the terms of the statute except that the certification of the Attorney-General as to the name of the owner resulted in service of that map and description upon Lee, who was the treasurer of claimant, as an individual rather than on the claimant or Lee as an officer of the claimant. The Court of Claims has held that there was an appropriation, and the Appellate Division, in reversing, has called attention to the fact that the preliminary notice was informal; that the second map was never legally served on the claimant, and that, therefore, the Commission had the right to withdraw it and all rights under the second map and description. Upon such conclusions it bases its decision that there was no appropriation.

We are of the opinion that the Appellate Division, whether right or wrong in its conclusion, entirely misconceived the question involved. Of course, the only map and description specifically describing that 0.004 acres of land as to which the award has been made, is the second map as to which the informal notice was served on this claimant. But that parcel was included in the first map filed, and that map and description have never been withdrawn nor has any attempt been made to withdraw them. They constitute, without question, a cloud on claimant's title if the appropriation should be held to be incomplete. No rights of claimant can be affected by

reason of the fact that the award made was limited to the small triangular parcel in question rather than to the entire parcel owned by claimant, and certified as owned by Lee. If this claimant were disputing the State's title to the land as to which the award was made, there might be some force in a contention that the State had not fulfilled the statutory requirement for appropriation. As the claimant had received actual notice and had filed its claim based upon the appropriation of its land, not under the second map, but on the first map, which covered the land in question, it is too late for the State to contend that it did not appropriate the land because of a technical error in certifying the name of the owner.

The prime purpose of this statute is to enable the State, by filing, certifying and serving notices, or, if service cannot be made, by filing in the County Clerk's office a map and description, to acquire the land required for a crossing elimination without being required to await the outcome of negotiations or a legal proceeding, to determine the price to be paid.

There is no argument nor basis for an argument that the State did not intend to take this small triangular strip of land in question, and, if it is held not to have taken it, it results in leaving the claimant with a piece of land which juts out into the otherwise continuous arc forming the easterly bounds of the land taken. The State, by filing and serving the first map and description and proceeding under the statute, appropriated claimant's land.

The judgment of the Appellate Division should be reversed and the award of the Court of Claims reinstated, with costs

CRANE, Ch. J., LEHMAN, O'BRIEN, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgment reversed, etc.